**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **NANCY STREMEL, Individually, and** ) | |
| **as Special Administrator** ) | |
| **of the ESTATE OF ALICE SOUTH** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No.** |
| ) | |
| ) | **Jury Trial Demanded** |
| **GREAT BEND-LTC, LLC; d/b/a GREAT BEND** ) | |
| **HEALTH & REHAB CENTER; FIVE RIVERS** ) | |
| **MANAGEMENT LLC; DAREN DOUSTON;** ) | |
| **AND KERRY GIBSON** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COMES NOW Plaintiffs Nancy Stremel, individually, and as Special Administrator of the Estate of Alice South and for their causes of action against the above-named defendants, states and alleges as follows:

### PLAINTIFFS

1.     Plaintiffs' Decedent, Alice South, was a resident of Great Bend Health & Rehab Center located at 1560 K 96 Hwy, Great Bend, KS 67530 from approximately December 24, 2016 to February 21, 2017.

2.     Plaintiff Stremel resides in Kansas, and is a surviving daughter and an heir-at-law of Alice South within the meaning of K.S.A. § 60-1902.

3.     Plaintiff Stremel is the duly appointed Special Administrator of the Estate of Alice South pursuant to letters issued on July 25, 2018, by the District Court of Barton County, Kansas, Case No 2018-PR-000079.

## DEFENDANTS

### GREAT BEND-LTC, LLC

4.      Defendant Great Bend-LTC, LLC, is a Georgia limited liability corporation.

5.      At all times relevant to this action, Great Bend-LTC, LLC owned, operated, and did business as Great Bend Health & Rehab Center, which is licensed by the State of Kansas as a skilled nursing facility.

6.      Consequently, Great Bend-LTC, LLC owed a duty to Alice South to use reasonable care for her safety while under her care and supervision at the nursing home.

7.      Great Bend-LTC, LLC can be served through its registered agent, The Corporation Company, Inc., located at 112 SW 7th Street Suite 3C, Topeka, KS 66603.

### Five Rivers Management, LLC

8.      Defendant Five Rivers Management, LLC, is a Georgia limited liability company that at all times material hereto exercised operational and/or managerial control over Great Bend-LTC, LLC.

9.      At all times relevant, Five Rivers Management, LLC, and/or individuals or entities acting on its behalf owned, operated, managed, maintained, and/or controlled – in whole or in part – Great Bend-LTC, LLC – which is a Kansas licensed nursing home.

10.     Five Rivers Management, LLC made the following admissions on the internet:

    a.  We are dedicated to maintaining a supportive, compassionate and caring home for our residents. Our mission is to provide the highest standards of care focusing on all residents' needs including quality of life, dignity and self respect.

b. We strive to create a family setting that makes residents feel at home and truly satisfied with their care. We understand the key to accomplishing this mission lies within those we employ. We encourage our employees to take ownership, make right decisions and focus on delivering the highest quality resident care.

c. It is our desire to be the provider of choice by exceeding the expectations of our residents, family members and community. We are committed to making a difference as we care of those who have cared for us.

d. Five Rivers Management, LLC was established February 1, 2012 with its corporate headquarters located in Alpharetta, GA. The principal Members of the company are Daren Douston, Chief Financial Officer, and Kerry Gibson, Chief Operating Officer.

e. Five Rivers operates and manages facilities in Illinois, Kansas and Texas employing approximately 300 associates.

f. Both Mr. Douston, Mr. Gibson and the entire corporate staff have extensive experience working in long term care.

11.     Five Rivers Management, LLC, was substantially engaged in the leasing, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation with and/or operation of the licensee, Great Bend-LTC, LLC.

12.     Consequently, Five Rivers Management, LLC, owed a duty to Alice South to use reasonable care for her safety while under her care and supervision at Great Bend-LTC, LLC.

13.     Defendant Five Rivers Management, LLC, can be served through its registered agent, The Corporation Company, Inc., located at 112 SW 7th Street Suite 3C, Topeka, KS 66603.

**Daren Douston**

14.     Daren Douston is a Georgia resident.

15.     At all times relevant, Daren Douston managed, maintained, and/or controlled – in whole or in part – Great Bend-LTC, LLC and Five Rivers Management, LLC.

16.     Specifically, Daren Douston was substantially engaged in the leasing, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation with and/or operation of the licensee, Great Bend-LTC, LLC and Five Rivers Management, LLC.

17.     Consequently, Daren Douston owed a duty to Alice South to use reasonable care for her safety while under her care and supervision at Great Bend-LTC, LLC.

18.     Daren Douston willfully participated in the tortious acts that are the subject of this Petition.  Particularly, Daren Douston, willfully failed to ensure that Great Bend-LTC, LLC had appropriate policies and procedures for its nursing staff; was properly capitalized, funded, staffed; and that staff received adequate training and supervision while Alice South was a resident.

19.     Daren Douston can be served at 105 Wrights Mill Pl., Alpharetta, Georgia 30022.

**Kerry Gibson**

20.     Kerry Gibson is a Louisiana resident.

21.     At all times relevant, Kerry Gibson managed, maintained, and/or controlled – in whole or in part – Great Bend-LTC, LLC and Five Rivers Management, LLC.

22.     Specifically, Kerry Gibson was substantially engaged in the leasing, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation with and/or operation of the licensee, Great Bend-LTC, LLC and Five Rivers Management, LLC.

23.     Consequently, Kerry Gibson owed a duty to Alice South to use reasonable care for her safety while under her care and supervision at Great Bend-LTC, LLC.

24.     Kerry Gibson willfully participated in the tortious acts that are the subject of this Petition. Particularly, Kerry Gibson, willfully failed to ensure that Great Bend-LTC, LLC had appropriate policies and procedures for its nursing staff; was properly capitalized, funded, staffed; and that staff received adequate training and supervision while Alice South was a resident at Great Bend-LTC, LLC.

25.     Kerry Gibson can be served at 118 White Dove Ln., Crowley, Louisiana 70526.

## DEFENDANTS' JOINT ENTERPRISE

26.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows.

27.     Defendants were engaged in a joint enterprise in that:

a.   Defendants had an agreement, express and/or implied, among the members of the group to operate Great Bend-LTC, LLC which is a Kansas licensed nursing home;

b.   Defendants had a common purpose to operate Great Bend-LTC, LLC which is a Kansas licensed nursing home;

c.   Defendants had a community of pecuniary interest in the operation of Great Bend-LTC, LLC which is a Kansas licensed nursing home; and

d.   Defendants had an equal right to a voice in the direction of the operation of Great Bend-LTC, LLC which is a Kansas licensed nursing home, which gave the Defendants an equal right of control.

28.     There has been a close relationship between the Defendants at all times relevant.

## JURISDICTION AND VENUE

29.     Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

30.     Plaintiff Stremel is a resident of Kansas. Plaintiff Stremel, as special administrator of the estate, is a Kansas resident pursuant to 28 U.S. Code § 1332 (c)(2).

31.     Defendants Great Bend-LTC, LLC and Five Rivers Management, LLC are Georgia corporations.

32.     Kerry Gibson is a Louisiana resident.

33.     Darren Douston is a Georgia resident.

34.     Therefore, Plaintiff Stremel brings her claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

35.     Pursuant to K.S.A. § 60-308(b)(2), defendants Great Bend-LTC, LLC; Five Rivers Management, LLC; Daren Douston; and Kerry Gibson purposefully availed themselves of the protections and/or benefits of the laws in Kansas by committing tortious acts within the state including, but not limited to, failing to ensure that Great Bend Health & Rehab Center had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

36.     A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in Kansas, thereby making venue proper in this Court.

## AGENCY

37.    Plaintiff incorporates by reference the allegations previously set forth and further allege as follows.

38.    The acts hereinafter described were performed by the agents, representatives, servants, and employees of defendants and were performed either with the full knowledge and consent of defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the defendants.

39.    Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Alice South.

### Defendants' Management of Great Bend-LTC, LLC

40.    Plaintiff incorporates by reference the allegations previously set forth and further allege as follows.

41.      Defendants exercised substantial control over significant aspects of the operation and management of Great Bend-LTC, LLC prior to and during Alice South's period of residency therein, including but not limited to, the creation, setting, funding and/or implementation of budgets; creating and maintaining business relationships with related parties as defined by the Centers for Medicare and Medicaid Services that resulted in an undercapitalized and understaffed nursing home; the hiring and training of staff; the monitoring of resident acuity levels and staffing sufficiency to meet each resident's needs; control over resident admissions and discharge to and from the facility; and the creation and enforcement of written policies and procedures pertaining to the rules that provide for the safety and well-being of residents.

42.      Each of these managerial and operational functions had a direct impact on the quality of care delivered to Alice South and other residents at Great Bend-LTC, LLC and were taken in furtherance of an operational and managerial objective over the licensee Great Bend-LTC, LLC.

43.      Defendants substantially derive their revenue and profits from the receipt of taxpayer dollars through federally and state funded Medicare and Medicaid programs.

44.      Under Medicare, residents with higher acuity levels, i.e., a greater number and degree of illnesses, place higher demands for care and services on the nursing home and its staff.

45.      The rate at which the skilled nursing facilities accepting Medicare dollars for the delivery of nursing home care and services, and accordingly the amount of their ultimate revenue and profits, are normally based upon the acuity level of the residents confined to their facilities.

46.     Thus, Great Bend-LTC, LLC had an incentive to maintain the highest possible occupancy and acuity level while minimizing patient care expenses, such as additional staff through the employment of enough RN's, LPN/LVNs, and CNAs.

47.     That being said, Great Bend-LTC, LLC still had an obligation to sufficiently staff its facility based not only upon the number of residents residing in the facility but also the residents' total acuity level.  Put simply, the more services residents need, i.e., the higher the total acuity level, the more staff that is required

48.     Every resident in a skilled nursing facility – like Great Bend-LTC, LLC – is assigned a Resource Utilization Group ("RUG") category regardless of payor status, i.e., private pay, Medicare, or Medicaid.

49.     The Minimum Data Set ("MDS") generates each person's RUG category.

50.     The MDS is a comprehensive nursing assessment that determines how much nursing help the resident needs and based on that analysis assigns a RUG category.

51.     The facility then submits the MDS and RUG category for each resident to CMS.

52.     The higher the RUG category the more help and nursing time the resident needs.

53.     Put another way, RUG categories are like the rungs of a ladder.  People who need very little nursing care are slotted at the very bottom rungs of the ladder. Towards the top of the ladder are the individuals that require the most nursing care.

54.     CMS uses the number of residents for each RUG category in a nursing home to calculate its expected staffing level.

55.      Indeed, CMS conducted a time study over a three-year period that determined the number of RN, LPN, and CNA minutes each RUG category required per day.

56.      In other words, CMS has looked at all these RUG categories – or different rungs of the ladder – and determined how much time it takes to care for somebody at each one of those rungs.

57.      In fact, CMS' expected staffing hours/minutes are calculated by adding the nursing time in minutes contained in the CMS Time Study for each resident's RUG category

58.      Each RUG category requires a certain HPPD for registered nurses, licensed practical nurses, and aides.  This system applies to all residents, no matter their pay source.

59.      CMS publishes these expected staffing numbers on the Internet for anyone to review at https://data.medicare.gov/data/archives/nursing-home-compare.      More importantly, the technical users' guide for the 5-Star Rating System **specifically directs the nursing home where to obtain its expected staffing data**:

> A downloadable file that contains the "expected", "reported" and case-mix adjusted hours used in the staffing calculations is available at: http://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/FSQRS.html. The file, referred to as the "Expected and Adjusted Staff Time Values Data Set", contains data for both RNs and total staff for each individual nursing home.

60.      Here, CMS expected Great Bend-LTC, LLC to provide 2.19 hours of aide time per resident per day; 0.57 hours of LPN time per resident per day; .92 hours of RN time per resident per day in March and April 2017.  In sum, CMS expected Great Bend-LTC, LLC to provide 3.69 hours of direct nursing care time per resident per day in February 2017.

| exp_aide | exp_lpn | exp_rn | exp_total |
|----------|---------|--------|-----------|
| 2.19357  | 0.57471 | 0.92947 | 3.69776  |

61.     Here, defendants engaged in a systematic process of ensuring Great Bend-LTC, LLC maintained the highest occupancy and acuity rate possible while providing insufficient staff to meet the individual needs of Alice South during her period of residency therein.

62.     The data submitted by Great Bend-LTC, LLC through CMS' payroll based journal ("PBJ") system shows that it provided far less direct care nursing staff then CMS expected.

63.     Specifically, throughout 2017, defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that Great Bend-LTC, LLC was sufficiently staffed to meet the individual needs of Alice South during her period of residency therein.

64.     In addition, throughout 2017, defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that Great Bend-LTC, LLC was sufficiently capitalized to meet the individual needs of Alice South during her period of residency therein.

65.     In other words, defendants' actions throughout 2017 resulted in an undercapitalized and understaffed nursing home during Alice South's residency.

66.     Upon information and belief, while holding Great Bend-LTC, LLC out to Alice South and other members of the public as providing excellent care, defendants and their related entities, as reflected on the facility's 2017 Medicare and Medicaid Cost Reports – signed under penalty of perjury and filed with the state of Kansas and the federal government – extracted considerable profit through the management and operation of Great Bend-LTC, LLC by paying management, administration and consulting fees, as well as other "costs," to the defendants named herein and other related entities from funds which should have been utilized to hire, train and retain sufficient numbers of qualified staff to meet the needs of Alice South.

67.     Specifically, upon information and belief defendants engaged in transactions with each other, i.e., "related parties" as defined by the Centers for Medicare Services at dollar amounts far exceeding fair market value and in contradiction of "prudent buyer" principles.

68.     Upon information and belief, these payments made by the nursing home to other defendants throughout 2017 constituted funds that could and should have been utilized to hire, train and retain sufficient numbers of qualified staff to meet the needs of Alice South.

69.     This undercapitalization and lack of sufficient staff directly resulted in Alice South not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to development and worsening of an infection – and eventually resulted sepsis and her death.

70.     In accepting and utilizing taxpayer dollars through Medicaid and Medicare reimbursement in the provision of nursing home care and related services provided to Alice South and other residents, Defendants undertook a duty and were obligated to comply with the federal Nursing Home Reform Act of 1987 a/k/a the Omnibus Budget Reconciliation Act of 1987 (OBRA '87) signed into law by President Ronald Reagan, and provide care and services that met the prevailing standard of care in the delivery of all care and services provided to Alice South while she resided within the nursing home known as Great Bend-LTC, LLC.

## COUNT I

### Plaintiff Stremel's Wrongful Death Claim Against Defendants

71.     Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

72.     As a result of her defenseless and dependent condition, Alice South relied upon defendants to provide for her safety, protection, care and treatment.

73.     At all relevant times, defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

74.     These duties required defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Alice South.

75.     These duties required defendants to have sufficient and qualified staff at Great Bend-LTC, LLC nursing home to ensure the proper care for, and treatment of all residents including Alice South.

76.    These duties required defendants to ensure that Great Bend-LTC, LLC's nurses and other staff were properly educated and trained with regard to the care for, and treatment of all residents including Alice South.

77.    These duties required defendants to ensure that Great Bend-LTC, LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Alice South

78.    Specifically, during the course of their care and treatment of Alice South, defendants and their agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

a.  By failing to timely, consistently, and properly assess and document Alice South's physical condition;

b.  By failing to adequately assess Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

c.  By failing to provide adequate supervision and/or intervention to address Alice South's risk of contracting a urinary tract infection, pneumonia and resulting sepsis;

d.  By failing to provide adequate nursing staff to ensure Alice South's 24-hour protective oversight and supervision;

e.  By failing to properly supervise and train the employees, agents and/or servants of the defendants who were responsible for the care and treatment of Alice South;

f.  By failing to provide competent and qualified staff;

g.  By failing to provide adequate training to staff regarding the prevention of a urinary tract infection, pneumonia and sepsis;

h.  By failing to provide adequate supervision of staff regarding the prevention of a urinary tract infection, pneumonia and sepsis;

     i.   By failing to enact and carry out an adequate care plan in regard to Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

     j.   By failing to timely report to a physician changes in the condition of Alice South;

     k.   By failing to carry out the instructions of Alice South's physician;

     l.   By failing to adequately, timely and consistently prevent, assess, and treat Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

     m.   By failing to timely transfer Alice South to a facility that could provide her adequate care;

     n.   By failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment and treatment of resident at risk for a urinary tract infection, pneumonia and resulting sepsis; and

     o.   By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of a urinary tract infection, pneumonia and sepsis.

79.    The wrongful acts of defendants directly caused or directly contributed to cause the death of Alice South.

80.    As a direct and proximate consequence of the death of Alice South, Plaintiff Stremel has sustained pecuniary and non-pecuniary damages, including, but not limited to, mental anguish, suffering and bereavement; loss of companionship; loss of services, loss of attention and loss of a complete family; loss of familial care, advice, and protection.

WHEREFORE, Plaintiff Stremel prays that the Court enter judgment against defendants for a reasonable sum of money in excess of seventy-five thousand dollars ($75,000) for damages in order to fairly compensate for the losses suffered.

## COUNT II

### Plaintiff Stremel's Negligence Claim as Special
### Administrator of the Estate of Alice South Against Defendants

81.     Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as if fully set forth herein.

82.     As a result of her defenseless and dependent condition, Alice South relied upon defendants to provide for her safety, protection, care and treatment.

83.     At all relevant times, defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

84.     These duties required defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Alice South.

85.     These duties required defendants to have sufficient and qualified staff at Great Bend-LTC, LLC nursing home to ensure the proper care for, and treatment of all residents including Alice South.

86.     These duties required defendants to ensure that Great Bend-LTC, LLC's nurses and other staff were properly educated and trained with regard to the care for, and treatment of all residents including Alice South.

87.     These duties required defendants to ensure that Great Bend-LTC, LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Alice South

88.     Specifically, during the course of their care and treatment of Alice South, defendants and their agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

a.  By failing to timely, consistently, and properly assess and document Alice South's physical condition;

b.  By failing to adequately assess Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

c.  By failing to provide adequate supervision and/or intervention to address Alice South's risk of contracting a urinary tract infection, pneumonia and resulting sepsis;

d.  By failing to provide adequate nursing staff to ensure Alice South's 24-hour protective oversight and supervision;

e.  By failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Alice South;

f.  By failing to provide competent and qualified staff;

g.  By failing to provide adequate training to staff regarding the prevention of a urinary tract infection, pneumonia and sepsis;

h.  By failing to provide adequate supervision of staff regarding the prevention of a urinary tract infection, pneumonia and sepsis;

i.  By failing to enact and carry out an adequate care plan in regard to Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

j.  By failing to timely report to a physician changes in the condition of Alice South;

k.  By failing to carry out the instructions of Alice South's physician;

l.  By failing to adequately, timely and consistently prevent, assess, and treat Alice South's risk for a urinary tract infection, pneumonia and resulting sepsis;

m.  By failing to timely transfer Alice South to a facility that could provide her adequate care;

n.  By failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment and treatment of resident at risk for a urinary tract infection, pneumonia and resulting sepsis; and

a.  By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of a urinary tract infection, pneumonia and sepsis.

89.     As a direct and proximate result of the individual and collective acts of negligence of defendants as described above, Alice South suffered severe pain, anxiety, mental distress, and death.

90.     As a direct and proximate result of the individual and collective acts of negligence of all defendants as described above, Plaintiff, suffered damages including, but not limited to, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement and mental anguish.

91.     The actions of defendants were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of the welfare and safety of Alice South and others, such that, in addition to damages for pain and suffering, defendants are liable for aggravating circumstances damages for their grossly negligent care of Alice South.

92.     At the time defendants caused and allowed Alice South to develop and permit the development and worsening of an infection, they knew that their conscious disregard to provide adequate staff; properly capitalize Great Bend-LTC, LLC; train, and/or supervise their agents, servants and/or employees during 2017 created a high degree of probability of injury to residents, and consciously disregarded the safety of all residents including Alice South.

93.     Accordingly, defendants showed a complete indifference to, or conscious disregard, for the safety of others, including Alice South and warrants aggravating circumstances damages be assessed against defendants in an amount that is fair and reasonable and will punish defendants and deter them and others from similar conduct.

94.     As a direct and proximate result of defendants' negligence, and complete indifference to, or conscious disregard, for the safety of others, including Alice South, Alice South was harmed and suffered damages, including but not limited to pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; death; and other damages.

95.     Plaintiff Stremel is entitled to a jury trial as to the amount of punitive damages pursuant to the Seventh Amendment of the United States Constitution and *Jones v. United Parcel Services, Inc.*, No. 09–3275 (10th Cir. 2011).

WHEREFORE, Plaintiff Stremel prays that the Court enter judgment against defendants for a reasonable sum of money in excess of seventy-five thousand dollars ($75,000) for actual and punitive damages together with the costs and expenses herein occurred, attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT III

### Alter Ego Against Defendants Five Rivers Management LLC; Daren Douston And Kerry Gibson ("Alter Ego Defendants")

96.     Plaintiffs incorporate by reference all of the foregoing allegations in this Petition as though fully set forth herein.

97.     Great Bend-LTC, LLC is so dominated by the Alter Ego Defendants that Great Bend-LTC, LLC is a mere instrument of Alter Ego Defendants and are indistinct from Alter Ego Defendants.

98.     In fact, Great Bend-LTC, LLC is so controlled and influenced by the Alter Ego Defendants in that they exercised complete control and domination over Great Bend-LTC, LLC finances and business practices.

99.     Specifically, the Alter Ego Defendants complete control and domination over Great Bend-LTC, LLC caused its undercapitalization and understaffing during 2017 and George's residency.

100.    Upon information and belief, the Alter Ego Defendants complete control and domination over Great Bend-LTC, LLC caused it to operate at a loss during the year of 2017.

101.    Upon information and belief, the Alter Ego Defendants complete control and domination over Great Bend-LTC, LLC caused its liabilities to exceed its assets during the year of 2017.  Specifically,

    a.  The Alter Ego Defendants own all or most of the capital stock of the Great Bend-LTC, LLC;

    b.  The Alter Ego Defendants and the Great Bend-LTC, LLC have common directors or officers;

    c.  The Alter Ego Defendants finance Great Bend-LTC, LLC;

    d.  The Alter Ego Defendants subscribe to all of the capital stock of the Great Bend-LTC, LLC;

    e.  The Alter Ego Defendants caused the incorporation of Great Bend-LTC, LLC;

    f.  Great Bend-LTC, LLC has grossly inadequate capital;

    g.  The Alter Ego Defendants pays the losses of Great Bend-LTC, LLC;

    h.  The Alter Ego Defendants use the property of the Great Bend-LTC, LLC as its own; and

    i.  The directors or executives of Great Bend-LTC, LLC do not act independently in the interest of Great Bend-LTC, LLC but take their orders from the Alter Ego Defendants in the latter's interest.

102.    Thus, the Alter Ego Defendants used the corporate cloak of the Great Bend-LTC, LLC as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that the Alter Ego Defendants complete control and domination of the Great Bend-LTC, LLC depleted all of Great Bend-LTC, LLC's assets, thereby making it unable to pay a judgment resulting from its care of residents including Alice South.

103.    This undercapitalization and understaffing violated Great Bend-LTC, LLC's duties and the applicable standard of care owed by a nursing home operator or manager to the facility's residents.

104.    As a direct and proximate result of the individual and collective acts of negligence of Great Bend-LTC, LLC – and the Alter Ego Defendants – Alice South suffered severe pain, anxiety, mental distress, and death.

105.    As a direct and proximate result of the individual and collective acts of negligence of Great Bend-LTC, LLC – and the Alter Ego Defendants – Plaintiffs, suffered damages including, but not limited to, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement and mental anguish.

106.    The actions of the Great Bend-LTC, LLC – and the Alter Ego Defendants – were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of the welfare and safety of Alice South and others, such that, in addition to damages for pain and suffering, defendants are liable for aggravating circumstances damages for their grossly negligent care of Alice South.

107.    At the time Great Bend-LTC, LLC – and the Alter Ego Defendants – caused and allowed Alice South to permit the development and worsening of a urinary tract infection, pneumonia and resulting sepsis, they knew that their conscious disregard to provide adequate staff and properly capitalize Great Bend-LTC, LLC during 2017 high degree of probability of injury to residents, and consciously disregarded the safety of all residents including Alice South.

108.    Accordingly, Great Bend-LTC, LLC – and the Alter Ego Defendants – showed a complete indifference to, or conscious disregard, for the safety of others, including Alice South and warrants aggravating circumstances damages be assessed against defendants in an amount that is fair and reasonable and will punish defendants and deter them and others from similar conduct.

109.    As a direct and proximate result of Great Bend-LTC, LLC – and the Alter Ego Defendants – negligence, and complete indifference to, or conscious disregard, for the safety of others, including Alice South, Alice South was harmed and suffered damages, including but not limited to pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; death; and other damages.

WHEREFORE, Plaintiffs prays that the Court enter judgment against defendants for a reasonable sum of money in excess of seventy-five thousand dollars ($75,000) for actual and punitive damages together with the costs and expenses herein occurred, attorneys' fees and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on all issues in this action in Kansas City.

Respectfully submitted,

THE STEELE LAW FIRM

/s/ Jonathan Steele
Jonathan Steele                    KS # 24852
2345 Grand Blvd., Suite 750
Kansas City, MO 64108
Telephone: 816.754.6473
E-mail: jonathan@jsteelelawfirm.com

*Attorney for Plaintiff*